Henry BOEVERS, Petitioner,

v.

The ELECTION BOARD OF CANADIAN COUNTY, State of Oklahoma, Consisting of Wilbur Owen, Chairman, Peyton W. Churn, and Don Arnold, Secretary, and Wayne Kremeier, Respondents.

No. 57416.

Supreme Court of Oklahoma.

Nov. 17, 1981.

William D. Graves, Oklahoma City, for petitioner.

Richard M. Fogg, Fogg, Fogg & Howard, El Reno, for respondent Wayne Kremeier.

Bill James, Asst. Dist. Atty., El Reno, for respondent Canadian County Election Bd.

OPALA, Justice.

Henry Boevers, petitioner [contestant] seeks prerogative writ for corrective relief from the announced election results in a primary election in which he was a candidate for the Republican Party's nomination to the office of county commissioner from District 1, Canadian County. After a recount he had requested, the certified results gave contestant 227 votes, while Wayne Kremeier, the nominee [contestee] received 228 votes. Contestant challenged the correctness of the results by petition alleging irregularities sufficient in number to entitle him to a certificate of nomination.

The issues presented to us are: (1) May a party to an election contest disqualify a resident judge or judges without cause? (2) Are the announced results of an election recount impervious to any challenge on a pure and unmixed question of law? and (3) Did the county election board err as a matter of law in declaring void two ballots cast for contestant? We answer the first and last questions in the affirmative and the second in the negative.

After an unsuccessful recount, contestant sought to disqualify both of the judges regularly serving the district court in the county where the election was held from hearing his contest petition. The district judge immediately stepped down. He then "assigned" to the case the local associate district judge who refused to recuse himself. Following an adverse decision before that judge, contestant sought, in the instant proceeding, to have this court assign a nonresident judge to rehear the contest. We acceded to the request. An out-of-county judge took charge of the case and presided over the contest proceedings.

There was manifest error in the assignment of the contest by the local district judge to his resident associate. Rule 9, Rules on Administration of Courts, 20 O.S. Supp.1980, Ch. 1, App. 2, provides in subdivision (d) that no disqualified judge "... shall participate in the selection of another judicial officer for assignment to that case." There was also clear error in the associate district judge's view that he was not subject to recusal without cause. The provisions of 26 O.S.Supp.1980 § 8–121[1] clearly mandate that the resident judge in the county in which the contest petition is filed disqualify himself when he is challenged "by either party". The terms of 26 O.S.Supp.1980 §§ 8–119 and 8–120[2] unmistakably anticipate that, should another judge be sought upon a local district judge's recusal, the Supreme Court shall provide the needed replacement.

■ We therefore hold that when the judge regularly assigned to judicial service in the county where a contest petition is filed is asked by either party to disqualify himself without cause, he must do so. It shall then be incumbent upon counsel in the case to request the chief judge in the county that the Chief Justice assign a nonresident judge to hear the contest.

■ The nonresident judge assigned by the Chief Justice to preside at the contest expressed the opinion that he was powerless to effect a change in the announced results because by the provisions of § 8–114[3] the

---

1. The terms of § 8–121 are: "It shall be mandatory, whenever a petition to disqualify is filed by either party, for the district judge to disqualify himself."

2. The pertinent provisions of § 8–119 are: "If such petition is filed in the manner herein provided, the district judge of the county in which the alleged fraud occurred, *or such other judge as may be assigned by the Supreme Court*, shall hear and determine said issue ..." [Emphasis added].

The pertinent provisions of § 8–120 are: "If said petition is filed in the manner herein provided, the district judge of the county *or such other judge as may be assigned by the Supreme Court shall hear and determine said issue ...*" [Emphasis added].

3. Unless the contrary is indicated, all statutory citations which follow in the text and in the footnotes are to 26 O.S.Supp.1980.

The pertinent provisions of § 8–114 are: " * * * The county election board shall super-

county election board's recount decision must be treated as "final in all cases". In this view the judge was incorrect. The quoted phrase merely indicates that there is *no remedy by appeal* from the board's decision. The law does not preclude a later review if the remedy invoked by the contestant is one that is authorized by the provisions of the applicable statutes, §§ 8–119 and 8–120. Nor can the reference in § 8–114 to the finality of the board's decision be regarded as a bar to our own re-examination of any question of law which arises from a statutorily sanctioned election contest. The power of this court stems not from legislation but from fundamental law. Art. 7 § 4 Okl.Const. In the exercise of that constitutional authority—known as our "general superintendent control" over all courts and administrative agencies—this court is empowered to re-examine the correctness of any board ruling on an issue of law which may affect the ultimate outcome of an election. *Stover v. Alfalfa County Election Board,* Okl., 530 P.2d 1020, 1021 (1975); *Sparks v. State Election Board,* Okl., 392 P.2d 711, 712 (1964).

■ What remains to be decided here are the "pure and unmixed" questions of law tendered, but not resolved, in the contest hearing before the assigned judge. At issue is the correctness of the election board's decision that two of the ballots cast for contestant were void and could not be included in the announced results. In the mistaken belief that the alleged miscount of votes contestant sought to rectify by his petition below did not constitute an "irregularity" within the meaning of § 8–120, and that § 8–114 hence commanded him to accord absolute finality to the board's action, the assigned judge categorically declined to resolve the dispute over the two votes.

While "irregularity" is indeed difficult to dress in an all-inclusive definitional garb,[4] the broad language of §§ 8–118 and 8–120,[5] construed together, makes it apparent that what the legislature doubtless intended is that a § 8–120 contestant be free to raise *any* departure from, or violation of, the prescribed course of the law—other than fraud—which, when corrected, would establish either "that the contestant is lawfully entitled to be certified" as the winner or "that it is impossible to determine with mathematical certainty which candidate" is the victor.

The essential parts of the two ballots in contest are shown in reproduction immediately below.

**OFFICIAL REPUBLICAN BALLOT**

Primary Election, September 1, 1981
CANADIAN COUNTY

COMMISSIONER DISTRICT 1
(Vote for One)

contestee  WAYNE KREMEIER

contestant  HENRY BOEVERS

**OFFICIAL REPUBLICAN BALLOT**

Primary Election, September 1, 1981
CANADIAN COUNTY

COMMISSIONER DISTRICT 1
(Vote for One)

contestee  WAYNE KREMEIER

contestant  HENRY BOEVERS

---

vise such counting and *its decision shall be final in all cases.* * * *" [Emphasis added].

4. See e.g. *Hatfield v. Hatfield,* 59 Okl. 132, 158 P. 942, 944 (1916); *Duncan v. Wilkins,* 103 Okl., 221, 229 P. 801, 802 (1924); *Nation v. Savely,* 127 Okl., 117, 260 P. 32, 34 (1927) and *Babb v. City of Wichita,* 172 Kan. 416, 241 P.2d 755, 759 (1952).

5. The pertinent provisions of § 8–118 are: "In the event a candidate contests the correctness of the announced results of an election by alleging fraud *or any other irregularities* ...'" [Emphasis added].

The pertinent provisions of § 8–120 are: "When a petition alleging irregularities other than fraud is filed, said petition must allege a sufficient number of irregularities and of such nature as to:
1. Prove that the contestant is lawfully entitled to be certified ...
2. Prove that it is impossible to determine with mathematical certainty which candidate is entitled to be certified ...".

The upper ballot in contest was rejected because it was believed to have a "distinguishing mark". The terms of § 7–127(1) do provide that such a ballot "shall not be counted for any office or question thereon". The statutory provisions which invalidate ballots bearing a "distinguishing mark" have a long legislative history. They are also declaratory of the common law.[6] The term is one of art. It does not include every form of excess material penned on the ballot but not needed to show the voter's designated intention. Under the proscribed rubric fall only those marks—not used in an attempt to indicate a voter's choice—which show on the face of the ballot, or from evidence *aliunde*, a deliberate intent of having been placed there to set the ballot apart from others.[7] The upper ballot in contest here does not evince any such unlawful design. The lines drawn across contestee's name are all compatible with the designated intent of the voter to favor contestant's candidacy. They are plainly consistent with the choice indicated by the vote cast. Contrary proof is absent.

The lower ballot in contest here does no more than evince the voter's designated intention to favor contestant's candidacy. It is manifestly valid. The provisions of § 7–127(3) clearly include, among "valid markings", "a circle or square *which has been blackened in ink, even if the entire circle or square is not filled and even if the blackened portion may extend beyond the boundaries of the circle or square*." [Emphasis added]. The markings used are within the permissible limits of the statutory language in § 7–127(3).

Neither ballot in contest here bears improper marks and both clearly designate the voter's intention to favor contestant.

Writ granted commanding respondent-board to declare contestant to be his party's nominee.

**6.** *McClelland v. Erwin*, 16 Okl., 612, 86 P. 283, 287 (1906); *Moss v. Hunt*, 47 Okl. 1, 145 P. 760, 163 (1915).

**7.** A ballot bearing distinguishing marks is capable of being identified. The purpose of the rule

IRWIN, C. J., BARNES, V. C. J., and LAVENDER, DOOLIN and HARGRAVE, JJ., concur.

HODGES and SIMMS, JJ., dissent.

HODGES, Justice, dissenting.

I would allow the count of the upper ballot but would disallow the lower ballot, resulting in a tie vote to be governed by 26 O.S.Supp.1977 § 8–105.

The markings on the lower ballot, in my opinion, completely distort the intention of the voter.

I am authorized to state that Justice SIMMS concurs in the views herein expressed.

making such ballots void is to protect the secrecy of elections and to discourage bribery, fraud or corruption. *Gentry v. Reinhardt*, 350 Ill. 582, 183 N.E. 631 (1932).